**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-14118

Non-Argument Calendar

_____

GOLDSTAR PROPERTIES, LLC,

*Plaintiff-Appellant,*

*versus*

JUSTIN ANGEL,
LAW OFFICE OF KYLE FELTY PA,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:24-cv-14196-DMM

_____

Before BRANCH, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal is about a district court's lack of subject-matter jurisdiction. Goldstar Properties, LLC, sued Justin Angel and the

Law Office of Kyle Felty PA. Its complaint was unclear. Angel and the Felty Law Office argued that Angel was the sole member of Goldstar, so the action was not completely diverse. The district court held an evidentiary hearing to evaluate the factual attack on its subject-matter jurisdiction and concluded that diversity jurisdiction was not present. After careful review, we affirm.

**I.**

This lawsuit began when Goldstar Properties, LLC, sued Justin Angel and the Law Office of Kyle Felty PA in the Southern District of Florida. According to the complaint, Goldstar is a single-member LLC with its single member being Samuel Markovich, a Louisiana resident. The complaint alleges that Angel is a Florida resident, and that the Felty Law Office "is a professional association organized and existing under the laws of the State of Florida." Doc. 1 at 2.

The complaint is unclear. As best we can tell, the complaint alleges that Angel transferred to Markovich "100% of his membership interest in Goldstar." *Id.* After the transfer, Angel still "acted as the manager of Goldstar under verbal contract with Markovich, particularly with regard to acquisition and disposition of real estate." *Id.* Yet the complaint alleges that Angel formed other limited-liability companies to "fraudulently and intentionally conceal" real-estate activities from Markovich and Goldstar. *Id.* at 2–3. The complaint alleges that Angel's "self-dealing" transfers resulted in $2.7 million in damages. *Id.* at 3.

The complaint also alleges that the Felty Law Office acted as a closing agent for Angel for certain fraudulent transfers. According to the complaint, the Felty Law Office "knew, or should have known" that Angel's transfers were fraudulent. *Id.* at 3–4. So the complaint asserts that the Felty Law Office is jointly liable along with Angel for the $2.7 million in losses that Goldstar suffered. The complaint, however, fails to allege any cause of action against either Angel or the Felty Law Office.

The Felty Law Office moved to dismiss for lack of subject-matter jurisdiction. The Felty Law Office argued that the parties lacked complete diversity of citizenship. It contended that although Markovich brought this suit under the name of "Goldstar," he was not a member of Goldstar and that any purported transfer was a forgery. Because Angel, a Florida resident, was Goldstar's only member, Goldstar was a Florida resident, which meant that the district court would not have diversity jurisdiction over claims against two Florida resident defendants. Angel joined the Felty Law Office's motion.

After holding a seven-hour evidentiary hearing on the issue, the district court granted the motion to dismiss. The district court reasoned that the issue of diversity jurisdiction depended on the ownership of Goldstar, which turned on "whether the sale agreement between Markovich and Angel was legitimate." Doc. 100 at 1. The district court found that "the agreement is suspect in origin and illegitimate in force, and is the likely product of fraudulent acts

spearheaded by Mr. Markovich." *Id.* That finding led the district court to conclude that it lacked subject-matter jurisdiction.

In reaching that conclusion, the district court recounted the evidence and testimony presented at the evidentiary hearing. The district court was skeptical about the document in which Angel purportedly sold Goldstar to Markovich for $100, "a notably low sum considering the value of the disputed property and construction tools possessed by Goldstar." *Id.* at 3. Two witnesses signed the agreement—Jonathan Markovich and Tamar Markovich—both of whom are Markovich's children. Jonathan, a lawyer "who allegedly prepared the agreement and witnessed Angel's signature, is currently incarcerated in federal prison[] and presented no testimony." *Id.*; *see also* Doc. 114 at 177. And Tamar witnessed only her father, and not Angel, sign the document. Further, the purported sale agreement was notarized by Deborah Markovich Waserstein—Markovich's daughter. The district court took notice that Waserstein's actions violated Florida's notary laws that prohibited notarizing signatures of close family members and forbade the notarization of a signature when the notary has a financial interest in the transaction.

Angel, meanwhile, "testified unequivocally that he did not sign the purported sale agreement." Doc. 100 at 3. And "[t]he sole independent reviewer" that presented testimony, "an expert on forged documents . . . concluded Mr. Angel's signature was illegitimate." *Id.* Although Waserstein testified that she saw Angel sign the document, "her recounting of events was unreliable." *Id.* "She

could not recall any salient details about when or where the signature took place." *Id.* Those facts, combined with her violation of Florida notary laws, meant that the district court found her testimony "uncompelling." *Id.*

Further, despite Markovich having many years of experience in real estate and being a member of numerous LLCs, Markovich "could not supply a single public record indicating his membership interest (let alone ownership) in Goldstar." *Id.* at 4. Instead, "all bank records and official documents . . . including one bank record signed by [Markovich] himself twenty days after the sale allegedly occurred—list Angel as the sole owner and member of Goldstar." *Id.* And before this lawsuit started, Markovitch's law firm sent Angel a demand letter listing Goldstar as a potential defendant, "suggesting [Markovich] intended to sue the very LLC he now claims to own." *Id.* As a result, the district court found that Markovich's testimony itself was not credible, as he "failed to convincingly address these inconsistencies, and instead insisted, without evidence, that any document undermining his claim to Goldstar's profits must be a forgery." *Id.*

Because the district court determined that it lacked subject-matter jurisdiction, it dismissed the action without prejudice. Goldstar appealed. While this appeal was pending, the Felty Law Office filed a motion for an order of attorney fees under Federal Rule of Appellate Procedure 38. That motion is fully briefed.

## II.

When we review a district court's decision to dismiss an action under Rule 12(b)(1), we review the district court's underlying legal conclusions *de novo*. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1250 (11th Cir. 2007). "We review the district court's findings of jurisdictional facts for clear error." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999).

## III.

Our analysis proceeds in two parts. We first address the merits of Goldstar's appeal. We then move to the Felty Law Office's motion for attorney fees.

### A.

"Federal courts are courts of limited subject-matter jurisdiction." *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017). One type of subject-matter jurisdiction that allows federal district courts to hear a case is diversity jurisdiction. *Id.* The diversity jurisdiction statute allows district courts to hear cases between "citizens of different States" when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

"Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). "Facial attacks challenge subject matter jurisdiction based on the allegations in the

complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Id.* "Factual attacks," on the other hand, "challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* So when a district court resolves a factual attack, it "may consider extrinsic evidence such as testimony and affidavits." *Id.* Unlike a motion under Federal Rule of Civil Procedure 12(b)(6), a district court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" when faced with a factual attack. *Lawrence*, 919 F.2d at 1229 (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981)).

Here, Angel and the Felty Law Office launched a factual attack against Goldstar's complaint because they alleged that the actual underlying facts prevented the district court from exercising subject-matter jurisdiction. That factual attack allowed the district court to consider live testimony and weigh evidence about the membership of Goldstar. We find no error—and certainly not clear error—with the district court's factual finding that the purported sale agreement was a sham and that Markovich is not a member, sole or otherwise, of Goldstar. We also find no error with the district court's factual finding that Angel, a Florida resident, is the sole member of Goldstar. Accordingly, we agree with the district court's legal conclusion that it lacked diversity jurisdiction over this suit between a Florida plaintiff and two Florida defendants.

Goldstar's counterarguments fail to move the needle.

First, Goldstar contends that the entwinement exception to factual attacks on jurisdiction warrants reversal. When a factual

attack on jurisdiction "implicate[s] the merits of an underlying claim . . . the proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Morrison*, 323 F.3d at 925 (citation modified). In other words, when the attack on subject-matter jurisdiction is "intertwined with an element of the underlying cause of action," the district court must resolve the matter under Rule 12(b)(6) or Rule 56 and not decide contested issues of fact. *Id.* at 925, 929 (citation modified).

Goldstar's argument fails because, unlike in "intertwined" cases, the jurisdictional facts in question here are not about any potential element of a cause of action but are instead limited to the actual identity of the plaintiff. For instance, in *Morrison*, the district court concluded that it lacked subject-matter jurisdiction because the plaintiff was "not an 'eligible employee' under the" Family and Medical Leave Act. *Id.* at 922. We reversed the district court's dismissal order because that determination went to the heart of the merits of the case, so the defendant's factual attack on subject-matter jurisdiction was not "purely jurisdictional." *Id.* at 930. Here, however, the disputed jurisdictional facts are about *who* the plaintiff is, not *what* it must prove to establish a claim.

Second, Goldstar argues that the district court clearly erred by finding that the sale agreement was forged. We disagree. We, as an appellate court "reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony." *Owens v. Wainwright*, 698 F.2d 1111,

1113 (11th Cir. 1983). Here the district court aptly explained why it credited Angel's testimony that he did not sign the sale agreement against Waserstein's testimony that he did; Waserstein's testimony was spotty and unreliable, and she broke Florida's notary laws by notarizing the agreement. Of the other two witnesses to the document, one was in prison and the other did not actually see Angel sign the document. The handwriting expert opined that Angel's signature was illegitimate. And Markovich could not produce a single public record suggesting that he held a membership interest in Goldstar. We find no fault with the district court's factual findings.

Third, and finally, Goldstar argues that the district court erred by not requiring the handwriting expert to respond to additional exemplars on cross-examination. The gist of Goldstar's argument is that it asked the handwriting expert to examine new documents on the spot during cross-examination, the handwriting expert refused to do so, and the district court should have required him to examine the new documents. We see no reversible error here.

As we see it, the district court did not afford the handwriting expert's testimony great weight. It expressed doubts about the testimony: "I have some doubts about this science generally, and if we move forward in federal court, I'm not prejudicing where I might end up if we had a more full-blown *Daubert* inquiry." Doc. 114 at 48. And in its order, the district court limited its reference to the handwriting expert only to one line, remarking that "[t]he sole independent reviewer to testify in this matter . . . concluded Mr.

Angel's signature was illegitimate." And even if that conclusion were diminished by Goldstar's proposed cross-examination, it would not have changed the outcome of the proceedings, rendering any error harmless. *See EEOC v. STME, LLC*, 938 F.3d 1305, 1322 (11th Cir. 2019) (explaining that when there is no reasonable likelihood that the district court's error affected the outcome of the proceedings, the error is harmless and non-reversible). In light of the great weight of the evidence supporting the district court's conclusion, we see no reversible error here.

*B.*

Having concluded that the district court did not commit reversible error, we next address the Felty Law Office's motion for an award of attorney fees as a sanction under Federal Rule of Appellate Procedure 38. "Rule 38 sanctions are appropriately imposed against appellants who raise clearly frivolous claims in the face of established law and clear facts." *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016) (citation modified). A claim is frivolous under Rule 38 "if it is "utterly devoid of merit." *Id.* (citation modified).

We agree that the district court lacked diversity jurisdiction over this suit. And we share the district court's concerns about an underlying fraud to try to manufacture federal jurisdiction. But neither Angel nor the Felty Law Office moved for sanctions before the district court, which was "better situated than this Court to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." *Thompson v. RelationServe Media,*

24-14118                Opinion of the Court                11

*Inc.*, 610 F.3d 628, 638 (11th Cir. 2010) (citation modified). The Felty Law Office moved for sanctions only on appeal. Although Goldstar's arguments on appeal are incorrect, they are nonetheless colorable. Accordingly, we deny the Felty Law Office's motion for attorney fees.

## IV.

We **AFFIRM** the district court's order dismissing the action without prejudice. We **DENY** the motion for attorney fees.